# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| James Goins, | : | Case No. 4:09CV1551 |
| | : | |
| Petitioner | : | Judge James S. Gwin |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Keith Smith, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Respondent | : | |

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his August 2, 2006 re-sentencing to an aggregate term of imprisonment of 84 years, consequent to his conviction pursuant to a jury trial on the following counts. For acts committed against Mr. Sovak, petitioner was convicted of one count of attempted aggravated murder, one count of aggravated burglary, one count of aggravated robbery, and one count of kidnapping. For acts committed against Mr. and Mrs. Luchisan, petitioner was convicted of one count of aggravated burglary, two counts of aggravated robbery, two counts of kidnapping, one count of felonious assault,[1] and one count of receiving stolen property, with four of the counts bearing firearm specifications.

---

[1] Although he had been charged with two counts of felonious assault, the jury acquitted him of the count for acts committed against Mr. Luchisan.

1

Petitioner's sentencing history, as well as the facts of his case, were summarized by the state appellate court as follows:

> Goins and Barnette were both juveniles at the time. They pushed Mr. Sovak back into his home, repeatedly hit and kicked him, and knocked him to the ground many times. During this melee, they hit Mr. Sovak on the head with his telephone, causing serious injury. They forced Mr. Sovak to his kitchen where they found a set of keys, which they took. They then pushed Mr. Sovak down the stairs to his basement, where he passed out. The assailants dragged Mr. Sovak to a fruit cellar storage room in the basement and locked the door so that he could not escape. Later that evening, a neighbor of Mr. Sovak telephoned Jerome Jablonski (the victim's half-brother) to report that there was blood all over Mr. Sovak's house. Mr. Jablonski and his brother went to the house and found a trail of blood from the front door to the basement. Mr. Jablonski broke the lock on the fruit cellar and found Mr. Sovak inside, who had sustained a punctured lung, broken ribs and other broken bones.
>
> Also on January 29, 2001, Louis Luchisan, age 64, and his wife Elizabeth, were in their home in the same neighborhood as Mr. Sovak. Mr. Luchisan, who is confined to a wheelchair, had been working at his computer when two assailants kicked in the side door of his house. One of the men was carrying a firearm, which Mrs. Luchisan described as a sawed-off rifle or shotgun. The two assailants threatened to shoot the Luchisans if they did not give them some money. They hit Mr. Luchisan over the head with a plate, and Mrs. Luchisan saw blood flowing down her husband's head from the wound. Goins and Barnette took Mrs. Luchisan to different rooms in the house looking for money. Mrs. Luchisan gave them about $ 167, while Mr. Luchisan gave them $ 20. Goins and Barnette also hit Mrs. Luchisan with a telephone, and threatened to kill her. She eventually had to have staples put into her head as a result of the injuries.
>
> Just before the attackers left, Mrs. Luchisan heard a car horn beeping, indicating that a third assailant was waiting outside. Goins and Barnette took the keys to Mr. Luchisan's car, a blue Chevy Malibu. They stole the car and a 27-inch television from the Luchisan's home.
>
> The police were notified to be on the lookout for the stolen vehicle. The car was spotted as the police were still inspecting the two crime

scenes. Officer Joshua M. Kelly, who was on foot, saw the vehicle and pulled out his service firearm. The car suddenly veered and crashed into a tree. There were four people in the car, including Goins in the front passenger seat. Officers also found a sawed-off rifle in the vehicle, similar in appearance to the weapon used at the Luchisan home. Goins fled from the car after the crash, and was captured soon afterward.

Police found a blue denim jacket in Goins' home. In the jacket pocket they found the keys to the Sovak's house. They also confiscated the clothing that Goins was wearing when he was captured, and blood analysis was later performed on that clothing.

During the investigation the police photographed footprints left in the snow outside both Mr. Sovak's and Goins' residences. The police also examined footprints from the Formica floor in Mr. Sovak's home, as well as a footprint left on the door of the Luchisans' house where it had been kicked in. The shoes of both Goins and Barnette were seized by the police. The tread on those shoes was found to match shoe tread marks left at the crime scene.

On February 5, 2001, a juvenile delinquency complaint was filed against Goins alleging twelve counts, including attempted murder, aggravated burglary, aggravated robbery, kidnapping, felonious assault, and receiving stolen property. The State filed a motion to transfer the case to the adult division of the Mahoning County Court of Common Pleas. On February 22, 2001, the court held a bindover hearing in which it found probable cause for all the offenses except for the kidnapping charges. The court held that the mandatory bindover provisions of R.C. 2151.26 applied to the charges of attempted aggravated murder, the aggravated burglary of the Luchisans, the aggravated robbery of Mr. Luchisan, and the aggravated robbery of Mrs. Luchisan. The juvenile court then bound the entire case over to the Mahoning County Grand Jury.

On March 22, 2001, the Mahoning County Grand Jury indicted Goins on the following charges: 1) attempted aggravated murder of Mr. Sovak; 2) aggravated burglary of Mr. Sovak; 3) aggravated robbery of Mr. Sovak; 4) kidnapping of Mr. Sovak; 5) aggravated burglary of the Luchisans; 6) aggravated robbery of Mr. Luchisan; 7) aggravated robbery of Mrs. Luchisan; 8) kidnapping of Mr. Luchisan; 9) kidnapping of Mrs. Luchisan; 10) felonious assault of Mr. Luchisan; 11) felonious assault of Mrs. Luchisan; 12) and receiving stolen property. Four of the counts contained gun

specifications. The court consolidated the matter with the criminal case proceeding against codefendant Chad Barnette.

On November 28, 2001, Goins and Barnette filed writs of habeas corpus with this Court, challenging whether the Mahoning County Court of Common Pleas, General Division, had jurisdiction over criminal charges that were not bound over from the juvenile division. *Goins v. Wellington* Nos. , 01 CA 3503, 2001 Ohio 208. This court denied both writs on December 18, 2001, and the case proceeded to a jury trial beginning on March 4, 2002.

On March 12, 2002, the jury found Goins guilty of all counts except for one count of felonious assault against Mr. Luchisan. The jury also found Goins guilty of the gun specifications in counts six, seven, eight and nine.

A sentencing hearing was held on March 20, 2002. The trial court filed its judgment on March 21, 2002. The court sentenced Goins to the maximum prison terms on each count, and to three years in prison on each gun specification. The court held that the kidnapping charges merged with robbery charges. The court also determined that all remaining sentences must be served consecutively to each other, for a total of 85 1/2 years in prison.

Goins appealed his conviction and sentence to this court, asserting six assignments of error. Concerning Goins' sentence, this court determined that he could not be sentenced for both aggravated robbery and receiving stolen property that involved the same stolen property. This court also found that the trial court failed to make the required findings to justify imposing the maximum prison sentence for the aggravated robbery of Mr. Sovak. Accordingly, Goins' eighteen-month prison sentence on the charge of receiving stolen property (count twelve in the indictment) was modified to run concurrently with the sentences for the remaining counts. Goins' prison sentence on the charge of aggravated robbery (count three in the indictment) was reduced to three years in prison, to run concurrently with the sentences on the remaining counts. Goins total prison sentence was modified to an aggregate of seventy-four years in prison.

Goins had also argued that the maximum consecutive sentences violated his right to jury trial under *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435.

> In accordance with established precedent in this appellate district at the time, *State v. Barnette,* 7th Dist. No. 02 CA 65, 2004 Ohio 7211, this court rejected that particular argument and affirmed the trial court's conviction and sentence in all other respects. *State v. Goins,* 7th Dist. No. 02 CA 68, 2005 Ohio 1439.
>
> Both Goins and the State appealed this court's decision to the Ohio Supreme Court in case No. 2005-0809. *State v. Goins,* 106 Ohio St.3d 1503, 2005 Ohio 4605, 833 N.E.2d 1246. Goins again asserted that the maximum consecutive sentences violated his right to a jury trial under *Blakely* and *Apprendi.* The Ohio Supreme Court vacated Goins' sentence in accordance with *State v. Foster,* 109 Ohio St.3d 1, 2006 Ohio 856, 845 N.E.2d 470. *In re Ohio Criminal Sentencing Statutes Cases,* 109 Ohio St.3d 313, 2006 Ohio 2109, 847 N.E.2d 1174.
>
> The trial court resentenced Goins on August 2, 2006. For counts one through five (attempted aggravated murder, aggravated burglary, aggravated robbery, kidnapping, aggravated burglary), the trial court sentenced Goins to ten years in prison on each. For counts six through nine (aggravated robbery, aggravated robbery, kidnapping, kidnapping), the court sentenced Goins to ten years in prison on each, plus three years on each for the gun specification. The court held that the kidnapping charges merged with the robbery charges. The court also sentenced Goins to eight years in prison on count eleven (felonious assault). Lastly, the court ordered that all the sentences be served consecutively for an aggregate prison term of eighty-four years.

Petitioner appealed his August 2, 2006 re-sentencing to the Ohio Seventh District Court of Appeals alleging two assignments of error:

> 1. The trial court imposed cruel and unusual punishment upon Defendant-Appellant James Goins in violation of the Eighth Amendment to the United States Constitution when it sentenced him to a term of eighty-four years of imprisonment, effectively a life sentence without the possibility of parole.
>
> 2. The trial court erred when it imposed a sentence of eighty-four years of imprisonment upon Defendant-Appellant James Goins, as this sentence will unnecessarily burden Ohio's resources in violation of R.C. §2929.13(A).

5

On March 10, 2008 the appellate court affirmed the sentence imposed by the trial court.

Petitioner appealed the appellate court ruling to the Ohio Supreme Court alleging propositions of law which paralleled those raised to the lower appeals court. On July 9, 2008 the state supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On July 7, 2009 the petitioner filed the instant petition, in which he raises the following four claims for relief:

> **A. GROUND ONE:** The Petitioner's sentence must be vacated, as the sentences imposed violate the Petitioner's jury trial right and the right to be free from cruel and unusual punishment.
>
> **Supporting FACTS:** The Petitioner first submits that his sentences must be vacated, as the imposition of such sentences: (1) violates his jury trial right, and (2) constitutes cruel and unusual punishment for his offense.
>
> **B. GROUND TWO:** The Petitioner's conviction and sentence must be vacated, as he was denied the right to confront and cross-examine witnesses against him.
>
> **Supporting FACTS:** At Petitioner's trial, the State presented DNA evidence, which was critical, because of uncertain identifications made by victims, to the State meeting its burden of proof.
>
> **C. GROUND THREE:** The Petitioner did not receive constitutionally effective assistance of counsel.
>
> **Supporting FACTS:** The failure of Petitioner's trial counsel to object to, move in limine, move to strike, or otherwise confront the criminalists' testimony– as discussed in Section IV, supra, by way of a "Daubert" hearing, deprived him of his constitutional right to the effective assistance of counsel as guaranteed him by the Sixth and Fourteenth Amendments to the United States Constitution.

> **D. GROUND FOUR:** The trial court did not have jurisdiction over the Petitioner's case; therefore, the convictions violate due process.
>
> **Supporting FACTS:** The Appellant next submits that because the procedure used to bind over his case from the juvenile court system was fatally flawed, the court of conviction never had proper jurisdiction over the case, thus, the kidnapping convictions violate due process.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. Lindh v. Murphy, 521 U.S. 320 (1997).[2]

The respondent asserts that petitioner's second, third and fourth claims for relief are subject to dismissal as procedurally defaulted in light of petitioner's failure to raise them in his appeal to the state supreme court.

The exhaustion doctrine requires that before filing a petition in federal habeas corpus a defendant must utilize all available state remedies, through a motion or petition for review by the state's highest court, by which he/she may seek relief based upon an alleged violation of constitutional rights. Granberry v. Greer, 481 U.S. 129, 133 (1987). Under the exhaustion doctrine a petitioner must "fairly present" each federal constitutional claim to the state courts before seeking relief in federal court. Baldwin v. Reese, 541 U.S. 27 (2004); Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995). In so doing, state courts are afforded "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Fair presentation of the factual and legal basis for a federal constitutional issue to the state's

---

[2]There are no issues of untimeliness in this case.

7

courts may be made in four ways:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), citing Franklin v. Rose, 811 F.3d 322, 326 (6th Cir. 1987), cert. denied, 532 U.S. 958 (2001).  Accord, Whiting v. Burt, 395 F.3d 602, 613 (6th Cir. 2005); Blackmon v. Booker, 394 F.3d 399, 400 (6th Cir. 2004).  It is not enough to present the facts giving rise to the federal claim raised in habeas corpus;  a petitioner must present the same legal theory to the state courts as is presented to the federal courts in order to preserve the claim. Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998).  Even if a claim is related, but distinct, the claim is nonetheless defaulted.  Lott v. Coyle, 261 F.3d 594, 607, 619 (6th Cir. 2001).

In addition, merely "mak[ing] a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court[,]" does not sufficiently apprise the state court of a specific federal constitutional guarantee so as to exhaust the claim.  Gray v. Netherland, 518 U.S. 152, 162-63 (1996), citing Picard v. Connor, 404 U.S. 270, 271 (1971) and Anderson v. Harless, 459 U.S. 4, 7 (1982).  For example, use of the term "ineffective assistance" also fails to alert the state courts of the federal nature of a claim.  Baldwin v. Reese, supra.

Where a petitioner has failed to fairly present the factual and legal basis for a federal constitutional issue and where petitioner would be barred from pursuing relief on that claim in the state courts, the petition should not be dismissed for failure of exhaustion in light of the fact that there would be no available state remedies to exhaust.  Hannah v. Conley, supra at 1195-96; Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994).   Under a longstanding Ohio procedural rule, a claim

8

which could have been but was not raised on direct appeal would be barred from being raised in a delayed appeal or in a petition for post-conviction relief. See, Collins v. Perini, 594 F.2d 592, 593 (6th Cir. 1978). However, the petitioner must then demonstrate cause for failure to fairly present the claims to the state courts and actual prejudice to petitioner's defense at trial or on appeal. Gray v. Netherland, supra at 162; Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Deitz v. Money, 391 F.3d 804, 808 (6th Cir. 2004).

    This Court agrees with the respondent that although petitioner raised the arguments articulated in his second, third and fourth claims for relief in his appeal to the Ohio Seventh District, he failed to raise them on appeal to the state supreme court.

    In his appeal to the supreme court, petitioner raised a sentencing issue which parallels the argument in his first claim for relief in these proceedings, as well as a proposition of law which challenged the admission of scientific evidence, including "blood evidence, DNA evidence, and 'footprint analysis' evidence," without conducting a "gatekeeping hearing" to determine the "reliability of the testing procedure and that the person who conducted the test does indeed have the expertise to present that evidence to a trial jury," a proposition for which he refers to the testimony of Ms. Donna Rose, the "shoe print 'expert,'" whose testimony he asserted was unreliable.

    A different issue was raised in petitioner's second claim for relief in these proceedings where, as can be found in the brief attached to his petition, he challenges the admission of the testimony of Mr. Dale Laux, a serologist from the Ohio Bureau of Criminal Investigation and Identification, arguing that since Mr. Laux did not analyze the DNA evidence, he should not have been permitted to testify as to the results, as such testimony denied petitioner his right to confront

9

and cross-examine witnesses against him.

In his third claim for relief, petitioner argues that he was denied the effective assistance of trial counsel by reason of counsel's failure to object to the foregoing testimony of Mr. Laux, which is once again a different issue than that which was raised on appeal to the state supreme court.

Petitioner's fourth claim for relief presents a challenge to the jurisdiction of the trial court based on what he perceived to have been a "fatally flawed" process which was used to "bind over his case from the juvenile court system," an issue which was not raised on appeal to the supreme court.

Petitioner would be unable to pursue relief on these claims in the state courts in light of the fact that he could have raised them on direct appeal, but did not, which causes them to be barred by the doctrine of res judicata. State v. Perry, 10 Ohio St.2d 175 (1967). In turn, in light of the fact that the claims could have been but were not raised on direct appeal to the state supreme court, petitioner would be barred from raising them in a delayed appeal or in a petition for post-conviction relief, which would in turn bar a decision on those claims upon habeas review. Leroy v. Marshall, 757 F.2d 94, 100 (6th Cir. 1985). Having failed to demonstrate cause or prejudice for the procedural default, or evidence of a miscarriage of justice, petitioner's second, third, and fourth claims for relief are procedurally defaulted and subject to dismissal.

Turning to merits review of the remaining claim for relief, the provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. Lindh v. Murphy, 521 U.S. 320 (1997).

The role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254

(d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings; Williams v. Taylor, 529 U.S. 420 (2000), with the state court adjudication being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court];" and with the state court adjudication involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply." 120 S.Ct. at 1519-1520. In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's

application of clearly established federal law was objectively unreasonable." Id. at 1521. Even if the state court decision resulted in an incorrect application of federal law, if that decision is reasonable it will stand. Id. See, Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000).

The petitioner argues that his sentence violated his right to a jury trial and that it constituted cruel and unusual punishment.

Specifically, in the first portion of this claim for relief petitioner challenges the consecutive sentences imposed by the trial court which he contends "exceeded the statutory maximum" prison term without reliance upon factual findings made by a jury to enhance his sentence under the law, in violation of the rule of law set out by the United States Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004) and by the Ohio Supreme Court in State v. Foster, 109 Ohio St.3d 1, 845 N.E.3d 470 (2006).

This argument was raised on direct appeal of his original sentence, and the Ohio Supreme Court ultimately ordered petitioner to be re-sentenced upon the authority of State v. Foster, supra. Petitioner omitted this argument in his appeals challenging his sentence *upon re-sentencing*, which is a procedural impediment to considering it in these proceedings. See, Wright v. Lazaroff, Case No. 1:07CV1022, 2009 U.S.Dist. LEXIS 115694, at *75 (Report and Recommendation of Magistrate Judge Timothy S. Hogan May 15, 2009) (Where petitioner failed to raise a claim on direct appeal of the trial judge's decision after re-sentencing it was procedurally defaulted on habeas corpus.) However, in light of the January 14, 2009 decision of the United States Supreme Court in Oregon v. Ice, 555 U.S. ___, 2009 U.S. LEXIS 582 (2009), which abrogated portion of the Foster decision, and thus expanded the scope of judicial factfinding discretion in sentencing, by holding that judicial factfinding to determine whether consecutive sentences should be imposed

does *not* violate Apprendi/Blakely, even if this claim was to be considered petitioner could not succeed.

As to that portion of the first claim for relief in which petitioner argues that the sentences imposed upon re-sentencing are disproportionate to the offenses committed and, therefore, constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution, this Court disagrees.

The Sixth Circuit Court of Appeals has summarized the case law pertinent to this issue in Friday v. Pitcher, 99 Fed. Appx. 568, 573-574, 2004 U.S.App. LEXIS 4401 (6th Cir. 2004), as follows:

> The United States Supreme Court has held that the *Eighth Amendment* does not require strict proportionality between the crime and sentence. *Harmelin v. Michigan*, 501 U.S. 957, 965, 115 L.Ed.2d 836, 111 S.Ct. 2680 (1991) (plurality opinion). *See also Rummel v. Estelle, 445 U.S. 263, 63 L.Ed.2d 382, 100 S.Ct. 1133 (1980); Solem v. Helm*, 463 U.S. 277, 77 L.Ed.2d 637, 103 S.Ct. 3001 (1983). Rather, it only forbids "extreme sentences" that are "grossly disproportionate" to the crime. *Harmelin, 501 U.S. at 1001.* Further, as the Supreme Court recently observed in *Lockyer v. Andrade, 538 U.S. 63, 155 L.Ed.2d 144, 123 S.Ct. 1166 (2003),* "our precedents in this area have not been a model of clarity." *Id. at 72* (AEDPA case). Nonetheless, "through this thicket of *Eighth Amendment* jurisprudence, one governing legal principle emerges as 'clearly established' under *§2254(d)(1):* A gross disproportionality principle is applicable to sentences for terms of years." *Id. See also Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003).* ("The *Eighth Amendment,* which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"). On the other hand, as the Supreme Court observed in *Lockyer*, its cases "exhibit a lack of clarity regarding what factors may indicate gross disproportionality." *Lockyer, 538 U.S. at 72.*

The petitioner in that case, as does the petitioner in these proceedings, attempted to argue that because he was a juvenile when he committed the crimes, his lengthy sentence was "grossly

13

disproportionate," a proposition rejected by the Sixth Circuit:

> Petitioner focuses on his juvenile status as the factor that tips his sentence into a category of "grossly disproportionate." The aforementioned Supreme Court cases do not provide any direct support for this argument. *Cf. Lockyer, 528 U.S. 63* (holding that state court decision affirming the petitioner's two consecutive terms of twenty-five years to life in prison for a "third strike" conviction was not "contrary to" or an "unreasonable application" of "clearly established"gross disproportionality principles set forth by *Rummel, Solem,* and *Harmelin*); *Harmelin, 501 U.S. 957, 115 L.Ed.2d 836* (holding that life imprisonment without possibility of parole for possessing cocaine did not raise an inference of gross proportionality even though the defendant was a first-time offender); *Solem, 463 U.S. 277, 77 L.Ed.2d 637, 103 S.Ct. 3001* (holding that a life sentence without possibility of parole for a seventh nonviolent felony violated the *Eighth Amendment*). Here, Petitioner, although a first-time offender, committed a violent felony without justification. Furthermore, because he received a lesser offense of second-degree murder, parole is a possibility. In sum, it cannot be said that the Michigan Court of Appeals decision is contrary to, or an unreasonable application of, clearly established federal law. The district court did not err in denying the petition for writ of habeas corpus on this basis.

In the present case, the state appellate court upheld the sentence imposed by the trial court, holding in pertinent part as follows:

> The Eighth Amendment to the Constitution of the United States and Section 9, Article I of the Ohio Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 370-371, the Ohio Supreme Court observed:
>
> "Historically, the Eighth Amendment has been invoked in extremely rare cases, where it has been necessary to protect individuals from inhumane punishment such as torture or other barbarous acts. *Robinson v. California* (1962), 370 U.S. 660, 676, 82 S.Ct. 1417, 1425, 8 L.Ed.2d 758, 768. Over the years, it has also been used to prohibit punishments that were found to be disproportionate to the crimes committed. In *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 30 O.O.2d 38, 203 N.E.2d 334, this court

14

stressed that Eighth Amendment violations are rare. We stated that '[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person.' *Id*. at 70, 30 O.O.2d at 39, 203 N.E.2d at 336. Furthermore, 'the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.' *Id*. See, also, *State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46, paragraph three of the syllabus."

In order to determine whether the sentence imposed is disproportionate to the offense committed, a tripartite analysis is employed. "First, we look to the gravity of the offense and the harshness of the penalty ***. Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive. *** Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." Id., quoting *Solem v. Helm* (1983), 463 U.S. 277, 290-291, 103 S.Ct. 3001, 77 L.Ed.2d 637.

A reviewing court need not reach the second and third prongs of the tripartite test except in the rare case when a threshold comparison of the crime committed and the sentence imposed lead to an inference that the two are grossly disproportionate. *Weitbrecht* at 373, fn. 4, citing *Harmelin v. Michigan* (1991), 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836, (Kennedy, J., concurring); *State v. Keller* (June 1, 2001), Montgomery App. No. 18411.

Here, Goins appears to at first advance a proportionality argument. However, perhaps because of the brutal nature in which his offense were carried out, Goins makes no attempt to examine the gravity of the offense in relation to the harshness of the penalty. Consequently, it does not appear that this is the type of rare case where a threshold comparison of the crime committed and the sentence imposed lead to an inference that the two are grossly disproportionate.

Rather, Goins argues that he was effectively handed a life sentence since he will never be eligible for parole and will be one-hundred years old when his sentence is completed. Goins points out that Ohio reserves a life imprisonment sentence for only the offenses of murder and rape of a child less than thirteen years of age. Although Goins' victims included three elderly people, he stresses that no one

15

was killed and none of the offenses for which he was convicted involved children.

For those offenses for which life imprisonment is an available sentence, Goins emphasizes that even in those instances, the offenders become eligible for parole. He will have no such chance, he contends. To illustrate his point, Goins cites *State v. Vlahopoulos*, 154 Ohio App.3d 450, 2003-Ohio-5070, 797 N.E.2d 580. Vlahopoulos was convicted of three counts of rape and sentenced to nine years to life imprisonment on each count, to be served consecutively. On appeal, Vlahopoulos argues that since he was forty-nine years old at the time, the sentence amounts to a sentence of life imprisonment without the possibility of parole. Addressing this argument, the Eighth District Court of Appeals observed:

"The flaw with Vlahopoulos' argument is that he neglects to consider that he was sentenced to an indefinite term of incarceration. While it may be that were he denied parole on any of the individual offenses it would amount to a life sentence, the fact remains that he is eligible for release on the nine-year minimum sentences. Since it is far from certain that he will remain in prison for the rest of his natural days, we cannot say that the sentence amounted to a term of life without parole." Id. at ¶3. See, also, *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 30 O.O.2d 38, 203 N.E.2d 334 (sentence of one to twenty years for operating motor vehicle without owner's consent was not cruel and unusual punishment, where person convicted would have been eligible for parole after serving ten months).

Goins' argument in this regard is misguided for it belies the serious nature of his offenses. Goins ignores the sheer number of violent, felony offenses for which he was convicted. And, as indicated earlier, he conveniently does not address the brutal nature in which the offenses were carried out and how his sentence might compare to that of other criminal defendants similarly situated.

We addressed a similar argument advanced by Goins' codefendant, Chad Barnette in *State v. Barnette*, 7th Dist. No. 06 MA 135, 2007-Ohio-7209. Barnette was convicted of the same crimes as Goins and received the same eighty-four year sentence. In *Barnette*, this Court observed:

"Although [Barnette] urges that his total sentence of eighty-four

16

>years is constitutionally too high, this is a conclusory allegation with no factual argument or support. Considering the facts of the offenses, the sentences are not so greatly disproportionate to the offenses so as to shock the sense of justice in the community. See *Weitbrecht*, 86 Ohio St.3d at 371.
>
>"It was found by a jury that [Barnette] purposely tried to kill an elderly victim of a burglary and that [Barnette] locked him up hoping to ensure his death. This was not an isolated event as he continued his rampage at a nearby house where he terrorized a disabled man and his wife. [Barnette] was a juvenile, but he already had a sizeable and related criminal record. As such, it was not unreasonable for the trial court to determine that the savage occurrences in the case at hand establish that [Barnette's] persona was too tainted for rehabilitation and that he required long-term incarceration to protect the community from his flawed sense of entitlement. This is not the rare case where the cruel and unusual punishment argument merits consideration." Id. at ¶¶43-44. These observations apply equally to Goins.
>
>Accordingly, Goins' first assignment of error is without merit.

The state appellate court having upheld the trial court's imposition of the sentences, those sentences were within the penalty set by statute, and neither sufficiently "extreme" or "grossly disproportionate" so as to violate the Eighth Amendment. Consequently, petitioner cannot meet the overall burden of showing that the state court ruling was either contrary to or involved an unreasonable application of federal law and his first claim for relief must fail.

In light of all the foregoing it is concluded that no claim of constitutional violation has been presented requiring further proceedings prior to disposition on the merits, and it is, therefore, recommended that the petition be dismissed without further proceedings.

s/DAVID S. PERELMAN<br>
United States Magistrate Judge

DATE:    February 11, 2010

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).