UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
JAMES GOINS, :
 : CASE NO. 4:09-CV-1551
       Petitioner, :
 :
    v. : OPINION & ORDER
 : [Resolving Doc. No. 1]
KEITH SMITH, :
 :
       Respondent. :
 :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    James Goins petitions for a writ of habeas corpus under 28 U.S.C. § 2254. [Doc. 1]. With his petition, Goins seeks relief from his Ohio state-court convictions and sentences for one count of attempted aggravated murder, two counts of aggravated burglary, three counts of aggravated robbery (two with gun specifications), three counts of kidnapping (two with gun specifications), one count of felonious assault, and one count of receiving stolen property. [Doc. 1; Doc. 16-2]. Respondent Keith Smith, Warden of the prison where the Petitioner is incarcerated, opposes the petition. [Doc. 8]. On February 11, 2010, Magistrate Judge David S. Perelman recommended that the Court deny Goins's petition. [Doc. 11]. Goins objects to that recommendation. [Doc. 12; Doc. 13]. For the following reasons, the Court **OVERRULES** Goins's objections, **ADOPTS** Magistrate Judge Perelman's recommendation, and **DENIES** Goins's petition.

I.

    On March 12, 2002, an Ohio state-court jury convicted Goins on eleven criminal counts stemming from his participation in two violent home-invasion robberies on January 29, 2001. *State*

Case No. 4:09-CV-1551
Gwin, J.

v. Goins, No. 02-CA-68, 2005 WL 704865, at *21 (Ohio Ct. App. Mar. 21, 2005) (*Goins I*). The evidence at trial showed that Goins and an accomplice, Chad Barnette—both sixteen-years-old at the time—attacked eighty-four-year-old William Sovak as he was picking up his morning newspaper. *Id.* at *1. The two pushed Sovak "back into his home, repeatedly hit and kicked him, [] knocked him to the ground many times," and hit him "on the head with his telephone." *Id.* Goins and Barnette then pushed Sovak "down the stairs to his basement" (at this point, Sovak lost consciousness), dragged him into a fruit cellar, and locked the door to prevent escape. *Id.* Sovak wasn't discovered until later that evening, after a neighbor reported seeing "blood all over" Sovak's house. *Id.* Sovak "sustained a punctured lung, broken ribs and other broken bones." *Id.*

Later that day, Goins and Barnette broke into another home in the same neighborhood. *Id.* In coming upon the residents—sixty-four-year-old (and wheelchair-bound) Louis Luchisan and his wife, Elizabeth—Goins and Barnette demanded money and threatened to kill the Luchisans if they did not comply. *Id.* To prove that they were serious, the two youths "hit Mr. Luchisan over the head with a plate" and "hit Mrs. Luchisan with a telephone." *Id.* And one of the two assailants carried a firearm as they led the Luchisans around the house in a search for money. *Id.* All this brutal treatment for $187, for a 27" television set, and for the keys to the Luchisans' blue Chevy Malibu. *Id.*

On February 5, 2001, the Youngstown, Ohio, Police Department filed a twelve-count juvenile-delinquency complaint against Goins, alleging that he had committed attempted murder, aggravated burglary, aggravated robbery, kidnapping, and felonious assault. [Doc. 8-1, at PageID 92-95]. The juvenile court bound the case over to the Mahoning County Grand Jury, which indicted Goins on the same twelve counts. *Id.* at PageID 71-81. Goins was tried as an adult, and was

-2-

Case No. 4:09-CV-1551
Gwin, J.

convicted on all but one count.

On March 20, 2002, the state trial court sentenced Goins to the maximum sentence for each count of conviction, all to run consecutively, for a total aggregate prison term of eighty-five-and-a-half years. [Doc. 8-1, at PageID 132-33; Doc. 16-2]. The sentencing judge explained: "It is the intention of this Court that you should not be released from the penitentiary and the State of Ohio during your natural li[fe]." [Doc. 16-2, at 47].

Goins appealed his sentence, arguing (1) that the bindover process from juvenile court violated due process; (2) that the trial court's decision to admit purported scientific evidence without first determining its scientific reliability violated due process; (3) that the trial court's decision to allow a witness—Dr. Louis Maddox—to testify about DNA tests performed by others violated the Sixth Amendment; (4) that he was denied the effective assistance of counsel; and (5) that his lengthy sentence was cruel and unusual punishment in violation of the Eighth Amendment. [Doc. 8-1, at PageID 136-37]. The Ohio Seventh District Court of Appeals generally rejected Goins's claims, but did revise his sentence down to seventy-four years after concluding that the trial court had incorrectly applied Ohio's merger doctrine and had failed to justify imposing the maximum sentence for one of the aggravated-robbery charges. *Goins I*, 2005 WL 704865, at *21.

Goins then appealed to the Ohio Supreme Court, again arguing that his sentence constituted cruel and unusual punishment and that the trial court erred when it admitted purported scientific evidence without first determining its scientific reliability. [Doc. 8-1, at PageID 275-79]. Additionally, Goins raised what looks to have been a new argument—that the trial court improperly imposed the maximum available sentence on the basis of facts not found by the jury. The Ohio Supreme Court, accepting the appeal only as to Goins's sentence, vacated and remanded for

Case No. 4:09-CV-1551
Gwin, J.

resentencing consistent with its decision in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006) (severing as unconstitutional portions of Ohio's sentencing statutes permitting harsher sentences based on facts found by the sentencing judge rather than the jury and giving trial courts discretion to impose any sentence within the statutory range without first making any findings).  *In re Ohio Criminal Sentencing Statutes Cases*, 847 N.E.2d 1174 (Ohio 2006), *resolving State v. Goins*, 833 N.E.2d 1246 (Ohio 2005) (*Goins II*) (table).

On remand, the trial court resentenced Goins to an aggregate term of eighty-four years' imprisonment—again, the maximum possible under Ohio law.  And Goins again appealed, arguing that this sentence, too, violated (1) the Eighth Amendment, because it was effectively a life sentence without the possibility of parole; and (2) Ohio law, by unnecessarily burdening the state's resources.  [Doc. 8-1, at PageID 339].  The Ohio Seventh District Court of Appeals affirmed the sentence, *State v. Goins*, No. 06-MA-131, 2008 WL 697370 (Ohio Ct. App. Mar. 10, 2008) (*Goins III*), and the Ohio Supreme Court denied leave to appeal, *State v. Goins*, 889 N.E.2d 1027 (Ohio 2008) (*Goins IV*) (table).

On July 7, 2009, Goins filed this timely petition for a writ of habeas corpus, asserting five grounds for relief:  (1) that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment; (2) that the trial court improperly imposed the maximum available sentence on the basis of facts not found by the jury; (3) that he was denied the right to confront witnesses against him in violation of the Sixth Amendment; (4) that he received ineffective assistance of counsel; and (5) that the bindover process from juvenile court violated due process. [Doc. 1].  The Court referred Goins's petition to Magistrate Judge Perelman for a Report and Recommendation.  Magistrate Judge Perelman recommended that the Court deny Goins's petition, concluding that ground one failed on

Case No. 4:09-CV-1551
Gwin, J.

the merits and that Goins had procedurally defaulted grounds two through five.  [Doc. 11].

Goins has filed two objections to Magistrate Judge Perelman's recommendation:  *First*, Goins says his Confrontation Clause claim was not—as Magistrate Judge Perelman concluded—procedurally defaulted; *second*, Goins maintains that in light of the Supreme Court's decision in *Graham v. Florida*, 130 S. Ct. 2011 (2010), his eighty-four-year sentence to incarceration violates the Eighth Amendment's prohibition on cruel and unusual punishment.  [Doc. 13; Doc. 17]. Accordingly, the Court reviews Goins's Confrontation Clause and Eighth Amendment claims *de novo*.  28 U.S.C. § 636(b)(1) (requiring *de novo* review of only those portions of a Report and Recommendation to which the parties have objected).

## II.

Generally, a federal court may not reach the merits of any claim that a habeas petitioner procedurally defaulted in state court.  *Reed v. Farley*, 512 U.S. 339, 354-55 (1994); *Williams v. Anderson*, 460 F.3d 789, 805-06 (6th Cir. 2006).  A claim might be procedurally defaulted when, for example, a petitioner fails to comply with a state procedural rule.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).  If, as a result, the state court never reaches the merits of the claim and the procedural rule provides an independent ground for precluding relief, the claim has been procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A claim also might be procedurally defaulted if the petitioner fails to raise and pursue it through the state's "established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A federal court excuses these procedural defaults only if the petitioner shows "cause" for the default and "actual prejudice" from the alleged error, or if the petitioner shows that he is actually innocent.  *Maupin*, 785 F.2d at 138-39.

Case No. 4:09-CV-1551
Gwin, J.

If a state habeas petitioner can show that his petition is not procedurally barred, a federal court must review the merits of the claim under the deferential standards set out in the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). AEDPA governs collateral attacks on state-court decisions and prohibits federal courts from granting habeas relief for any claim that the state court adjudicated on the merits unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).[1]

A state-court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth [by the Supreme Court], or if it decides a case differently than [the Court] has done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Section 2254(d) requires federal courts "to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law as determined by the Supreme Court of the United States that prevails." *Taylor*, 529 U.S. at 387 (citation omitted). Federal courts must evaluate whether federal law is "clearly established" by reference to "the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.

Similarly, a state-court decision is an "unreasonable application" of clearly established

---

[1] If the state's final judgment denying relief on a prisoner's federal claim was set forth in an unexplained order, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).

-6-

Case No. 4:09-CV-1551
Gwin, J.

federal law if it unreasonably applies Supreme Court precedent to the facts of a state prisoner's case, or if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407. A decision is not "unreasonable" merely because it is wrong; it must be so wrong that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the [Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

With that in mind, the Court considers Goins's two objections in turn.

### A. Goins procedurally defaulted his Confrontation Clause claim

Goins first complains that the state trial court should not have permitted one witness—Dale Laux—to testify about DNA evidence when it was "not clear from the trial record that Mr. Laux was the only 'analyst' of the DNA evidence." As Goins sees it, Laux's testimony violated Goins's Sixth Amendment right to confront the witnesses against him. [Doc. 1, at 15 (citing Crawford v. Washington, 541 U.S. 36 (2004) and Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009)); Doc. 13, at 3]. Because Goins did not pursue this Confrontation Clause claim through "one complete round of the State's established appellate review process," O'Sullivan, 526 U.S. at 845, he cannot now assert the claim on federal habeas review.

On his first direct appeal to the Ohio Court of Appeals, Goins did challenge one witness's testimony as a violation of the Confrontation Clause—that was Dr. Louis Maddox, who testified about scientific tests he did not himself conduct. *See* [Doc. 8-1, PageID at 166]. But Goins did not—as he does now—challenge Dale Laux's testimony as a violation of the Confrontation Clause. And in his brief to the Ohio Supreme Court Goins didn't raise *any* Confrontation Clause claim.

-7-

Case No. 4:09-CV-1551
Gwin, J.

Accordingly, Goins procedurally defaulted this claim because he did not fulfil his obligation to invoke one full round of the state appellate review process. See *Clinkscale v. Carter*, 375 F.3d 430, 436-41 (6th Cir. 2004) (a claim that was never raised before a state's highest court cannot be deemed "fairly presented" and cannot be reviewed by a federal habeas court). Because Goins offers neither evidence of cause or prejudice excusing this default, nor evidence of his innocence, the Court will not overlook his default. *Maupin*, 785 F.2d at 138-39.

What's more, Goins's Confrontation Clause argument—poorly developed as it is—probably fails. In *Williams v. Illinois*, the Supreme Court reaffirmed that a testifying expert may assume the truth of an out-of-court statement—in that case, a DNA profile produced by an outside laboratory—without violating the Confrontation Clause. 132 S. Ct. 2221 (2012) (plurality). The Court explained: "For more than 200 years, the law of evidence has permitted . . . an expert [to] express an opinion that is based on facts the expert assumes, but does not know, to be true." *Id.* at 2228. Goins can hardly complain, then, that Dale Laux's expert opinion relied on DNA tests conducted by others.

*B. Goins's eighty-four-year sentence is not "contrary to," or "an unreasonable application of," the Supreme Court's Eighth Amendment cases*

Goins also contends that his eighty-four-year aggregate sentence is "contrary to" his Eighth Amendment right to be free from cruel and unusual punishment. For support, Goins points to *Graham*, 130 S. Ct. 2011, where the Supreme Court held that the Eighth Amendment prohibits the imposition of life imprisonment without the possibility of parole on a juvenile non-homicide offender.

As an initial matter, Goins and Respondent Smith agree—and the Court will therefore

Case No. 4:09-CV-1551
Gwin, J.

assume—that *Graham* "prohibits[s] a certain category of punishment for a class of defendants because of their status or offense," *Penry v. Lynaugh*, 492 U.S. 302, 329-30 (1989), and therefore applies retroactively, *see Teague v. Lane*, 489 U.S. 288, 301 (1989). Nevertheless, Goins's Eighth Amendment claim was adjudicated on the merits in Ohio state court. Accordingly, this Court still must judge the Ohio courts' decisions against only "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Greene v. Fisher*, 132 S. Ct. 38, 44 (2011) ("The retroactivity rules that govern federal habeas review on the merits—which includes *Teague*—are quite separate from the relitigation bar imposed by AEDPA; neither abrogates or qualifies the other.").

*Graham* was not, of course, available to the Ohio state courts that rejected Goins's Eighth Amendment claim; the Ohio Supreme Court finally rejected that claim in July 2008, nearly 22 months *before* the Supreme Court decided *Graham*. And that raises some question whether AEDPA permits this Court to consider *Graham* as part of the "clearly established" federal law to which the Ohio Courts' decisions might be "contrary." *Greene*, 132 S. Ct. at 44 (reserving judgment on the question "[w]hether § 2254(d)(1) would bar a federal habeas petitioner from relying on a decision that came after the last state-court adjudication on the merits, but fell within one of the exceptions recognized in *Teague*."); *see Bunch v. Smith*, No. 10-3426, 2012 WL 2608484 (6th Cir. July 6, 2012). After all, AEDPA "requires federal courts to focus on what a state court knew and did, and to measure state-court decisions against th[e Supreme] Court's precedents as of the time the state-court renders its decision." *Id.* (citation omitted). In any event, because the Court must reject Goins's claim for another reason, it accepts for this opinion the fiction that *Graham* was "clearly established" federal law at the time Goins was sentenced. 28 U.S.C. § 2254(d).

-9-

Case No. 4:09-CV-1551
Gwin, J.

In *Graham*, the Supreme Court held that the Eighth Amendment categorically prohibits sentences to life imprisonment without the possibility of parole for juvenile offenders who did not commit homicide.  130 S. Ct. at 2030.  In the Court's view, sentencing a juvenile non-homicide offender to life imprisonment without the possibility of parole necessarily subsumes an improper determination that the juvenile offender, despite his reduced culpability, has no hope for rehabilitation.  *Id.* at 2029-30.  And the Court concluded that although "[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," it must give such offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."  *Id.* at 2030.

Goins now argues that his eighty-four-year sentence—though not formally a sentence to life imprisonment without the possibility of parole—is functionally the same in that it deprives him of any meaningful opportunity to obtain release during his natural life.  Accordingly, Goins says, his sentence is contrary to the clearly established law set forth in *Graham*.  In light of the Sixth Circuit's recent rejection of a nearly identical argument, *see Bunch*, 2012 WL 2608484, this Court must reject Goins's claim.

In *Bunch*, a juvenile offender (Chaz Bunch) received consecutive, fixed-term sentences for committing multiple non-homicide offenses in the state of Ohio.  *Id.* at *1.  Taken together, Bunch's sentences on the individual offenses totaled eighty-nine years.  *Id.*  Bunch appealed, arguing that his sentence violated the Eighth Amendment, but the Ohio Court of Appeals affirmed and the Ohio Supreme Court denied review.

Bunch then sought federal habeas relief.  The district court denied his petition and the Sixth Circuit affirmed.  The Sixth Circuit concluded that Bunch was not entitled relief because *Graham*

Case No. 4:09-CV-1551
Gwin, J.

In *Graham*, the Supreme Court held that the Eighth Amendment categorically prohibits sentences to life imprisonment without the possibility of parole for juvenile offenders who did not commit homicide. 130 S. Ct. at 2030. In the Court's view, sentencing a juvenile non-homicide offender to life imprisonment without the possibility of parole necessarily subsumes an improper determination that the juvenile offender, despite his reduced culpability, has no hope for rehabilitation. *Id.* at 2029-30. And the Court concluded that although "[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," it must give such offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 2030.

Goins now argues that his eighty-four-year sentence—though not formally a sentence to life imprisonment without the possibility of parole—is functionally the same in that it deprives him of any meaningful opportunity to obtain release during his natural life. Accordingly, Goins says, his sentence is contrary to the clearly established law set forth in *Graham*. In light of the Sixth Circuit's recent rejection of a nearly identical argument, *see Bunch*, 2012 WL 2608484, this Court must reject Goins's claim.

In *Bunch*, a juvenile offender (Chaz Bunch) received consecutive, fixed-term sentences for committing multiple non-homicide offenses in the state of Ohio. *Id.* at *1. Taken together, Bunch's sentences on the individual offenses totaled eighty-nine years. *Id.* Bunch appealed, arguing that his sentence violated the Eighth Amendment, but the Ohio Court of Appeals affirmed and the Ohio Supreme Court denied review.

Bunch then sought federal habeas relief. The district court denied his petition and the Sixth Circuit affirmed. The Sixth Circuit concluded that Bunch was not entitled relief because *Graham*

Case No. 4:09-CV-1551
Gwin, J.

"does not clearly establish that consecutive, fixed-term sentences for juveniles who have committed multiple nonhomicide offenses are unconstitutional when they amount to the practical equivalent of life without parole." *Id.* at *1. Instead, the Court said, *Graham* is a categorical rule applying—"clearly," at least, *see* 28 U.S.C. § 2254(d)—only to sentences to life imprisonment without the possibility of parole. *Bunch*, 2012 WL 2608484, at *5. So even though an eighty-nine-year aggregate sentence without the possibility of parole may be—and probably is—the functional equivalent of life without the possibility of parole, because "no federal court has ever extended *Graham*'s holding beyond its plain language to a juvenile offender who received consecutive, fixed-term sentences, [the Sixth Circuit could not] say that sentence was contrary to clearly established federal law." *Id.*

This Court is required to follow the Sixth Circuit and its decision in *Bunch*. According to that court, long, even life-long sentences for juvenile non-homicide offenders do not run afoul of *Graham*'s holding unless the sentence is technically a life sentence without the possibility of parole. Because Goins's sentence is not technically a sentence to life imprisonment without the possibility of parole, *Graham*'s categorical rule does not "clearly" apply to him. 28 U.S.C. § 2254(d).

Perhaps more important, the Ohio General Assembly has changed Ohio's sentencing law to markedly improve Goins's ability to pursue release. In particular, Ohio law now permits a defendant to request judicial release after he has served a portion of his sentence. Accordingly, Goins now faces a mandatory prison term of 42 or 45 years, after which he will be able to apply for judicial release. [Doc. 23; 25]. See Ohio H. 86, 129th Gen. Assembly (eff. Sept. 30, 2011) (amending Ohio Rev. Code § 2929.20 to permit offenders to file a motion for judicial release with the sentencing court after the later of one-half of their stated prison terms or five years after expiration of their

-11-

Case No. 4:09-CV-1551
Gwin, J.

mandatory prison terms).  Although he faces an extremely long sentence, Goins does not face a sentence on the order of the one imposed in *Graham*.

Without the ability to rely on *Graham*, Goins's Eighth Amendment claim evaporates.  This is not the rare case in which a comparison of the crime committed and the sentence imposed leads to an inference that the two are grossly disproportionate.  Even though the Supreme Court's "cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality," the gross-disproportionality principle is violated "only in the exceedingly rare and extreme case."  *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003) (internal quotations omitted).  And because Goins does not identify a Supreme Court case demonstrating that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, his petition must be denied.  28 U.S.C. § 2254(d); *see also Friday v. Pitcher*, 99 F. App'x 568 (6th Cir. 2004) (petitioner's focus on his juvenile status as the factor that tips his sentence into a category of "grossly disproportionate" failed to demonstrate his sentence was contrary to, or an unreasonable application of, clearly established federal law).

### III.

For these reasons, the Court **OVERRULES** Goins's objections, **ADOPTS** Magistrate Judge Perelman's recommendation, and **DENIES** Goins's petition.

IT IS SO ORDERED.


Dated: July 24, 2012                    s/        *James S. Gwin*
                                        JAMES S. GWIN
                                        UNITED STATES DISTRICT JUDGE